John E. Goerlich v. Commissioner. Selma E. Goerlich v. Commissioner.
Goerlich v. Commissioner
Docket Nos. 6195 and 6196.
United States Tax Court
1947 Tax Ct. Memo LEXIS 333; 6 T.C.M. (CCH) 45; T.C.M. (RIA) 47012; January 22, 1947
Frank M. Cobourn, Esq., 807 Ohio Bldg., Toledo, Ohio, and Richard S. Doyle, Esq., for the petitioners. W. W. Kerr, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax for 1941 of $36,336.06 against John E. Goerlich and one of $26,599.25 against Selma E. Goerlich. The Commissioner, in determining the deficiency against John E. Goerlich, added to his income as reported on his return, $57,219.38. He explained that this increase, being the shares of partnership income distributable to two trusts for the petitioner's minor daughters, represented additional income taxable to the petitioner, since the Commissioner did not recognize the trusts as members of the *334 partnership. The only issue in the case of John E. Goerlich is whether the income distributable to the two trusts under the terms of the partnership agreement is taxable to the petitioner under section 22 (a). The Commissioner, in determining the deficiency against Selma E. Goerlich, increased her income as shown on her return by $56,079.92 which he explained was taxable to her under section 22 (a) since she was the donor of two trusts for her minor daughters. He further explained that his primary position was that the amounts in question were properly includable as taxable income of John E. Goerlich on the basis that no partnership existed between him and the trusts, but that this alternative determination had been made in order to protect the revenue. The only issue for decision in the case of Selma E. Goerlich is whether the income of the two trusts is taxable to her under section 22 (a) and the doctrine set forth in . Findings of Fact The petitioners are husband and wife. They filed their income tax returns for 1941 with the collector of internal revenue for the 10th district of Ohio. John organized A P Parts Corporation (hereinafter *335 called A P) in December 1933 to sell automobile accessories. Goerlich's, Inc. was incorporated and its stock was all issued to A P. Goerlich's, Inc. served principally as a sales agency for A P. It purchased all or most of its merchandise from A P. It sold to mail order houses and general stores while A P sold principally to jobbers. The two companies handled substantially the same merchandise except that some of that sold by Goerlich's was repainted and sold at a cut rate price. The two companies occupied the same office and used the same warehouses. The customers of A P objected to its wholly owned subsidiary selling the same class of merchandise to their competitors at cut rate prices. The stockholders of A P decided in 1940 upon a plan for the dissolution of Goerlich's, Inc. and the formation of a partnership to carry on the same business. The purpose of this change was to separate the cut rate business from that of A P and to save taxes. The following table shows how the outstanding common and preferred stock of A P was owned on January 1, 1941: Common
Preferred
John E. Goerlich
210
44
Marguerite A. Cobourn
36
4
Selma E. Goerlich
204
Mary F. Cobourn
25
Ralph G. Rule
111
William E. Bullock
72
B. W. Lang
10
Donald Rule
15
J. J. Gallagher
7
F. A. Cook
12
450
300
*336 Selma and John had been almost equal owners of the business since 1936. A partnership agreement was entered into on January 1, 1941 by John E. Goerlich, William E. Bullock, Marguerite A. Cobourn, and Selma E. Goerlich as trustee for Selma Jane and Sandrea Sue Goerlich. The partnership was to begin on January 1, 1941 and was to continue for 20 years subject to dissolution at any time upon demand by any partner. The partners were to pay in the following amounts as an investment account and they were to share in profits and losses in proportion to those payments: John E. Goerlich
$27,500
William E. Bullock
5,000
Marguerite A. Cobourn
7,500
Selma E. Goerlich as trustee for
Selma Jane
30,000
Selma E. Goerlich as trustee for
Sandrea Sue
30,000 Members of the partnership were to be paid reasonable compensation for any services rendered. Distributable profits were to be computed after deduction of all expenses and were to be distributed annually. Selma E. Goerlich was a party as trustee only and was to have no beneficial interest, right, or liability on her separate account. The inventory of Goerlich's, Inc. at December 31, 1940, having a value of about $27,000, *337 was purchased by the partnership for cash. The cash and other assets of the corporation were distributed in liquidation to A P. A contract was entered into by the partnership and A P under which the partnership agreed to take over the obligations and contracts of Goerlich's, Inc. and to operate the business under substantially the same arrangements with A P. The contract fixed the prices at which A P was to sell merchandise to the partnership and obligated the partnership to acquire all of its merchandise from A P, except that it might purchase articles of like quality elsewhere at a lower cost if it found that it could do so. The merchandise was to be billed to the partnership at its cost to A P, plus 15 per cent. A P's salesmen in certain territories were authorized to make sales on behalf of the partnership, on which the partnership was to pay a commission of 5 per cent to A P. The partnership was to use office and storage space on the premises occupied by A P, for which it was to pay a rental of $250 per month plus a share of certain service charges and other expenses. The contract was for a term of five years, subject to termination by either party at the end of any calendar *338 year on notice of sixty days. John E. Goerlich was the only member of the partnership to whom a salary for services was paid during 1941. The amount paid to him during that year as salary for services rendered was $12,000. William E. Bullock served as sales manager for both the partnership and A P. A commission was paid to A P as compensation for services of William E. Bullock to the partnership. Selma E. Goerlich performed no regular services on behalf of the petitioner or of A P. Selma E. Goerlich desired to have her minor daughters benefit from the partnership rather than to become a partner herself. She executed two trust instruments on December 31, 1940, one for the benefit of each of her two minor daughters. She named herself trustee in each. The two trust instruments were substantially identical except for the names of the daughters. The grantor stated in each trust that she was transferring $15,000 in trust. Paragraph 2 of each trust was as follows: Said sum of $15,000.00, together with an additional $15,000.00 to be borrowed from John E. Goerlich, is to be paid into the investment account of a partnership to be organized with its principal place of business in Toledo, *339 Lucas County, Ohio, under the name "Goerlich's", in which partnership I, as Trustee hereunder, will have a 30% interest. I am to have full power to act as Trustee for and on behalf of said Beneficiary in the organization of said partnership, in fixing the terms and provisions of the partnership agreement, and in connection with its affairs, including any future changes in said agreement, or in the principal place of business or the name under which said partnership shall do business. Said loan from John E. Goerlich is to be evidenced by a promissory note signed by me as Trustee for the Beneficiary, and secured by said 30% interest in said partnership. It was provided in each trust instrument that the earnings of the partnership belonging to the trust were to be the separate property of the beneficiary and were to be distributed to her or her legal guardian as received, except that until the loan of $15,000 was fully paid, earnings could be devoted to the payment of the principal and interest of the loan. The donor also reserved the right in her uncontrolled discretion to accumulate up to one-half of the income and add it to corpus, adding it to the investment account of the partnership *340 "or any other partnership, or otherwise to invest the same as I see fit." The donor gave herself as trustee broad powers of management of the trust property. The trusts were to continue for 21 years or more but could be terminated by a distribution to the beneficiary earlier. The trust property, upon the death of the beneficiary, was to go to her issue or her lawful descendants. Selma E. Goerlich owned separate property at the close of 1940 and during 1941 having a value in excess of $200,000, but she did not have sufficient cash available to transfer $15,000 to each of the two trusts. She borrowed $18,000 from her husband on her promissory note and transferred that money, plus $12,000 of her own, to the trusts. She paid $15,000 in 1941 and the balance of the principal and interest on the note in 1942 out of her own funds. The partnership reported for 1941 gross receipts of $1,215,746.47, gross profits of $301,390.15, and net income of $106,053.13. Its deductions included commissions of $52,628.38 and salaries and wages of $47,866.95. The sales by A P to the partnership in 1941 amounted to over $850,000 on which A P had profits of approximately $30,000. The distributable shares *341 of the partners, as shown on the partnership return for 1941, were as follows: J. E. Goerlich
$37,864.61
Selma Goerlich, Trustee for
Selma J. Goerlich
28,215.94
Selma Goerlich, Trustee for
Sandrea Goerlich
28,215.94
Marguerite Cobourn
7,053.98
W. E. Bullock
4,702.66
Totals
$106,053.13
$15,445.98 of the amount shown above as distributable to each of the trusts was transferred to John E. Goerlich in payment of the principal and interest of his loan to each trust. He had himself appointed legal guardian for each child on December 22, 1941. He received as guardian for each of the two children $677.01. He filed fiduciary returns for 1941 as guardian for each child, reporting partnership income for each of $16,122.99. Selma E. Goerlich filed fiduciary returns as trustee for each trust in 1941 and reported in each undistributed income of $12,092.95 taxable to the trusts. John E. Goerlich bore the cost of support and maintenance of his children in 1941 and did not use any of the trust funds for that purpose. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The business of Goerlich's, Inc. was a valuable one which *342 the interested parties intended to retain. The petitioners in this case were two of those parties. Their interests were the largest but there were other substantial interests. One purpose of the change from corporate form to a partnership was the reduction of taxes. Another, according to uncontradicted evidence, was to satisfy the customers of A P who were complaining of the fact that A P, through a wholly owned subsidiary, was selling the same goods at cut rates to competitors of its regular customers, which competitors in turn sold at cut rates. The change to a partnership, of course, severed all interest which A P, as a corporation, had in the business, although certain of the stockholders of A P were the partners. The increased success of the business is not attributable primarily to the continued personal activities of John E. Goerlich. He was properly compensated for his services. The success of the business was due, inter alia, to the activities of A P and to the capital which was invested. There is no doubt that a valid partnership was created. The Commissioner has recognized it in so far as three of the partners are concerned. He denies only that the trusts were valid partners. *343 Selma was a real bona fide stockholder in A P and had been for a number of years. She could have become a partner with as much reason as in the case of Mrs. Cobourn. She chose instead to allow her two minor daughters to participate in the partnership business through trusts created by her for their benefit. She, personally, contributed one-half of the corpus of those trusts which was in turn contributed as capital of the partnership. The Commissioner does not seek to consider the part of each trust corpus which came from loans from John separately from the part which came from gifts made by Selma. He seeks to cast aside the whole participation of the trusts as a sham on the ground that the income was all earned by John. We find no valid reason for doing that. The arrangement was not a sham and the income was not solely the result of the activities of John. The evidence indicates that the profits distributed to him as "salary" adequately compensated him for the services which he rendered to the partnership. We are unable to agree with the Commissioner that the trusts should be ignored as partners and that the 60 per cent of the income of the partnership which was distributable to the *344 trusts under the terms of the partnership agreement should be taxed to John E. Goerlich. The above discussion disposes of the main contention made by the Commissioner. His determination of a deficiency against Selma E. Goerlich was inconsistent with his determination of a deficiency against her husband and is conceded to be an alternative only. The point which the Commissioner makes in support of his determination of a deficiency against Selma is that the income of the trusts is taxable to her as grantor under section 22 (a) and the principles set forth in the case of . He recites much of the history of the transactions involved in these cases and all of the terms of the trust instruments to support his argument that Selma retained control of the corpus and income of the trusts and retained benefits and satisfactions connected with the property to such an extent that she is taxable on the income of the trusts. She made complete transfers of the property to the trusts which were obviously designed to benefit her minor children. The powers which she retained were the same as those which any successor trustee would have. These included *345 the right in her uncontrolled discretion to accumulate a part of the income and to add it to corpus. The trustee could terminate each trust after the beneficiary reached a certain age, but the trust property was then to go to the beneficiary. If a beneficiary died prior to the termination of a trust, the property was to go to her issue or to her heirs. Perhaps, the most important power which she retained, as trustee, was the right to invest and reinvest the corpus of the trust as she saw fit. The purpose of the transfer was to enable the trusts to become partners. The trustee was given broad powers in regard to the management and investment of the trust property so that the trustee could participate as a partner for the benefit of the trusts and so that this participation could be continued in any later partnerships which might become necessary. Such powers in the trustees were probably necessary in view of the purpose of participating in a partnership. However, all powers given to Selma as trustee were to be exercised by her as a trustee and not as an individual. She was required by law to exercise them for the best interests of the beneficiaries rather than any selfish interests *346 of her own. The income of the trusts was not taxable to Selma under 22 (a). Decision will be entered under Rule 50.